UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH ROSAS,

                    Petitioner,                Case Number: 20-12429
                                              Honorable David M. Lawson

v.

CONNIE HORTON,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

A Wayne County, Michigan jury convicted petitioner Ralph Rosas of armed robbery and assault with intent to do great bodily harm. He was sentenced to a lengthy prison term, and his convictions and sentence were affirmed on direct appeal. After his post-conviction motion for relief was rejected by the state courts, Rosas filed a habeas corpus petition under 28 U.S.C. § 2254 without the assistance of an attorney. He argues that his trial counsel rendered ineffective assistance in multiple ways and that his sentence violates the Sixth Amendment. The respondent has filed an answer in opposition arguing that the claims are procedurally defaulted and meritless. Because Rosas has not shown that he is entitled to relief on these claims, the petition will be denied.

I.

In its opinion on Rosas's direct appeal the Michigan Court of Appeals summarized the facts leading to the convictions:

> This case arises out of a stabbing and robbery that occurred during a party at a roller skating rink in Sumpter, Michigan. Christopher Johnson, Anthony Jones, and Daniel Gilliam were security guards at the party. After Johnson attempted to remove one of defendant's friends from the rink, defendant and another person (the "assailant") chased Johnson through the rink parking lot. The assailant had a knife in his hand. At one point, Johnson ran through a crowd that had gathered in the parking lot. While making his way through the crowd, Johnson ran between

defendant and the assailant.  The assailant stabbed Johnson in the abdomen.
Thereafter, defendant and the assailant chased Johnson across a street to a gas
station. Gilliam followed them in an attempt help Johnson.  However, defendant
pulled a gun on Gilliam in the gas station parking lot and demanded that Gilliam
hand over all of his money. The assailant also put a knife up to Gilliam's face.  The
incident was caught on surveillance video.  Defendant and the assailant ran off but
were apprehended later that night.

*People v. Rosas*, No. 330296, 2017 WL 1367115, at *1 (Mich. Ct. App. Apr. 13, 2017).

The jury found Rosas guilty of assault with intent to do great bodily harm less than murder

and armed robbery.  On October 30, 2015, he was sentenced as a fourth habitual offender to 80 to

120 months for assault and 225 to 600 months for armed robbery.

On direct appeal, Rosas argued that the evidence was constitutionally insufficient to

convict him of assault with intent to cause great bodily harm under an aiding and abetting theory

and the trial court improperly allowed admission of hearsay testimony.  The Michigan Court of

Appeals affirmed Rosas's convictions.  *Ibid.*  The Michigan Supreme Court denied leave to appeal.

*People v. Rosas*, 501 Mich. 910, 902 N.W.2d 866 (2017) (mem.).

Rosas then filed a motion for relief from judgment in the trial court.  He raised six claims

for relief, all of which were denied by the court.  Rosas filed an application for leave to appeal in

the Michigan Court of Appeals.  The court of appeals dismissed the application because it was not

filed timely.  *People v. Rosas*, No. 350614 (Mich. Ct. App. Sept. 18, 2019).  The Michigan

Supreme Court denied Rosas's application for leave to appeal.  *People v. Rosas*, 505 Mich. 1040,

941 N.W.2d 626 (2020) (mem.).

Rosas filed his petition for a writ of habeas corpus, which appears to replicate many of the

same arguments he presented in his briefs to the state courts.  The allegations and claims use

language imported from those proceedings.  He identifies the following grounds for relief:

-2-

I. The trial court failed to comply with [Michigan Court Rule] 6.504 and properly review the merits of the defendant's well-supported motion for relief from judgment. Remand to the trial court is necessary where Mr. Rosas claims may be properly heard.

    A. Defendant Rosas was denied his Sixth Amendment constitutional right to a jury trial where his trial counsel failed to ask the court to remove two biased jurors for cause.

    B. Defendant Rosas was denied effective representation when his trial attorney failed to call *res gestae* witness Lashonda Love to testify.

    C. Defendant was denied his Fourteenth Amendment constitutional right to due process and his right to effective counsel when his trial counsel failed to object when lay witnesses provided expert testimony.

    D. Defendant Rosas was denied constitutionally effective representation when his trial attorney failed to request the lesser included offense of unarmed robbery.

II. Mr. Rosas is entitled to a *Crosby* remand for resentencing under *Lockridge*, as the court engaged in judicial factfinding that increased his sentencing range in violation of his Sixth Amendment rights.

III. Trial counsel was ineffective for failing to request a defense-of-others instruction.

In response, the warden argues that Rosas's claims are barred from review because they are procedurally defaulted. Alternatively, the warden argues that the claims are meritless.

The "procedural default" argument is a reference to the rule that a petitioner must preserve properly his claims in state court, and if he fails to do so the state court's ruling denying relief on that basis is an adequate and independent ground under state law that must be respected here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural defense. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v.*

*Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). AEDPA provides a "highly deferential standard for evaluating state-court rulings . . . ." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was

-4-

so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

## A.

In his first claim, Rosas argues that the trial court failed to comply with Michigan Court Rule 6.504 when deciding his motion for relief from judgment and failed to review properly the issues he raised. Rosas then sets forth four ineffective assistance of counsel claims that he maintains the trial court failed to consider correctly. Although his arguments regarding these claims focus on deficiencies in the state court's method and analysis rather than on the alleged errors as constitutional violations, the petition can be seen to raise both a challenge to the state-post conviction procedures and four ineffective assistance of counsel claims. Rosas also includes a fifth claim of ineffective assistance of counsel, also discussed below.

## 1.

Addressing the procedural argument, Rosas may not challenge the state court's collateral review procedure in a federal habeas corpus petition. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review."). Because "habeas corpus cannot be used to challenge errors or deficiencies in state postconviction proceedings," *Davis v. Burt*, 100 F.

App'x 340, 351 (6th Cir. 2004), Rosas' claim that the trial court failed to comply with Michigan's rules governing post-conviction review is not cognizable on federal habeas review.

2.

Rosas argues that his trial counsel rendered constitutionally ineffective assistance when he failed to: (a) move to excuse two biased jurors, (b) call *res gestae* witness Lashonda Love, (c) object to lay witnesses providing expert testimony, (d) request an unarmed robbery jury instruction, and (e) request a defense-of-others jury instruction.

The state trial court addressed some of these claims on the post-conviction motion, although most of the opinion contains boilerplate recitations of the law and not much discussion of the factual claims.  Nonetheless, the court applied state precedent that tracked the governing federal law, discussed below.  The trial court held that Rosas's claims were procedurally barred under Michigan Court Rule 6.508(D)(3) because he failed to show cause and prejudice for failing to raise these claims on his appeal of right.  However, the trial court also denied these claims on the merits.  The state appellate courts did not review that denial on the merits.

To determine whether a state court adjudicated the issues on the merits, the Court reviews the decision from "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)).  Because the state trial court included a merits discussion in its decision, the AEDPA's deferential standard of review governs here.  *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013) ("We acknowledge that the state court's additional language discussing Moritz's failure to raise a choice-of-counsel claim in earlier appeals is a reference to procedural default. But this circuit's precedents leave no doubt that as long as the state court put forward a merits-based ground

-6-

for denying post-conviction relief, its mentioning of procedural default as an alternative or even primary ground for denying relief does not preclude AEDPA deference.").

Rosas raised his claim that defense counsel was ineffective by failing to request a defense-of-others instruction for the first time before the Michigan Supreme Court in his application to appeal the unfavorable ruling on his post-conviction motion. The Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Rosas*, 505 Mich. 1040, 941 N.W.2d 626 (2020) (mem.). This claim, therefore, was not adjudicated on the merits, and the AEDPA's deferential review standard does not govern federal review of that claim.

Regardless of the review standard, a federal habeas petitioner asserting a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). And where the challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare because the *Strickland* standard is "difficult to meet." *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)).  Where the AEDPA applies, obtaining relief under *Strickland* is even more challenging because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

a.

First, Rosas argues that defense counsel was ineffective by failing to strike two "biased jurors," jurors 3 and 10.  To succeed on this claim, Rosas "must show that the juror was actually biased against him." *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001).  "Actual bias is 'bias in fact'— the existence of a state of mind that leads to an inference that the person will not act with entire impartiality" *Miller v. Webb*, 385 U.S. 666, 673 (6th Cir. 2004) (citations omitted).  But "[a]

-8-

juror's express doubt as to her [or his] own impartiality on voir dire does not necessarily entail a finding of actual bias." *Id.* at 674.

During *voir dire*, the trial court asked the potential jurors whether any had a close friend or relative who had been a crime victim.  ECF No. 11-8, PageID.464.  Juror number 3 responded that her grandfather had been struck by a vehicle.  *Id.* at 465.  Juror number 3 then stated that she would listen to the testimony, follow the jury instructions, and base her verdict on the law and the evidence.  *Ibid.*  This exchange falls far short of showing that juror number 3 was actually biased toward Rosas.  Because Rosas offers no evidence to show actual bias, he cannot demonstrate the requisite prejudice to support his claim.  The state court's rejection of this argument reasonably applied *Strickland*.

Rosas also argues that counsel should have moved to strike juror number 10.  This juror stated that he was the victim of a home invasion five years earlier that had "upset" him and that his nephew was serving a term of life imprisonment.  *Id.* at Page.ID.463-64.  The following exchange then occurred:

> The Court:  Anyone ever been prosecuted for a crime? … Anyone have any close friends or relatives who may have been prosecuted for crimes which would influence you in this case? …
>
> Juror No. 10:  Yes … I don't really know how to answer that because I just don't really like doing criminal.
>
> The Court: You don't want to be on the jury?
>
> Juror No. 10: No.
>
> The Court: Okay.  That's clear.  We'll excuse you.  Okay, let's bring someone else up.
>
> Juror No. 10: Thank you.

ECF No. 11-8, PageID.466.

The court clerk then directed the new potential juror to take "seat number nine." *Ibid.* Rosas argues that this statement establishes that juror number 10 was not excused. Considered in context, it is clear that juror number 10 was excused, and the court clerk simply misspoke. The trail court plainly excused juror number 10 and directed the clerk to "bring up someone else." The next juror was then questioned, although the transcript reference continues to indicate "Juror No. 9." *Ibid.* But even if juror number 10 served on the jury, there is no indication he was biased against Rosas. To be sure, juror number 10 did not want to serve on the jury, but that reluctance did not render him unable to follow instructions or suggest that he would not act "with entire impartiality." *Miller*, 385 F.3d at 673.

Because Rosas failed to show that juror number 10 actually served on the jury or that he was biased, the state court's decision that counsel's failure to challenge this juror did not constitute ineffective assistance was reasonable.

b.

Next, Rosas argus that defense counsel performed deficiently because he failed to call Lashonda Love as a witness. Rosas contends that Love's testimony would have supported the defense theory that, rather than robbing security guard Daniel Gilliam, Rosas was simply taking back money that was rightfully his. In an undated affidavit, Love stated that she was at the skating rink on the night of the incident and observed the following:

> I was at the door and observed Ralph [Rosas] get to the event in which I witnessed the security guard collecting more money than the cost to get in the event. Once inside … I again observed a different security guard requesting money from Ralph, which was given to him. A while later a different security guard approached Ralph … and told Ralph who was smoking … at the time and told Ralph to put the cigar out or he had to leave the party. I found out later the security guards were charging guests extra money to drink and smoke in the establishment which was not suppose[d] to be allowed. … [A]n altercation erupted between the security guards and party goers, as this altercation was happening I witnessed Ralph knocking on

the door to make an attempt to get in, to get his money back from the security guards who took it. … I reached out to [Rosas' attorney Allen Crawford months later] to inform him that I was a witness.  I was informed by Mr. Crawford he does not discuss his cases over the phone, he took my number and stated if he needed to speak to me he would contact me, which he never did.

ECF No. 1, PageID.72.

Rosas argues that because defense counsel did not call Love as witness, his attorney presented no evidence to support his defense that he was taking back his own money.  The trial record tells a different story.  Gilliam testified that when the security guards saw a patron breaking the venue's rules, the security guard would allow the patron to remain at the venue only if the patron paid $20 to the security guard.  ECF No. 11-9, PageID.640-642.  At one point in the evening, Gilliam saw Rosas drinking without a wristband.  *Id.* at PageID.640-641.  Gilliam told Rosas he needed to pay $20 if he wanted to stay in the venue or he would be forced to leave.  *Ibid.*  Rosas did not have the money, so his friend paid Gilliam $20.  *Ibid.*  Gilliam further testified that when Rosas later demanded money from him, Rosas took several hundred dollars from Gilliam, most of which Gilliam had before coming to the roller skating rink.  *Id.* at PageID.659.

There would have been no harm calling Love to testify.  But her testimony would not have contradicted Gilliam's.  So even if counsel performed deficiently by failing to call Love as a witness, Rosas has not shown prejudice flowing from this misstep.  Love's anticipated testimony that security guards improperly took money from patrons was placed before the jury through Gilliam's testimony.  But Love's statement did not address Gilliam's testimony that Rosas took much more than the $20 Rosas claimed was his.  Rosas has not offered any evidence that Love could have addressed this issue in a manner favorable to the defense.  Her testimony only would have reinforced Gilliam's testimony that Rosas was charged $20 for violating venue rules; it would not have provided any exculpatory testimony about the several hundred dollars reportedly taken

from Gilliam.  Therefore, Rosas fails to show that he was prejudiced by counsel's decision not to call Love as a witness.  He is not entitled to relief on this claim.

c.

Rosas next argues that counsel was ineffective by failing to object to testimony from four witnesses identifying Rosas as the man pictured in a surveillance video and still photographs extracted from the video.  He argues that Daniel Gilliam, Christopher Johnson, Anthony Jones, and Corporal John Ashby improperly gave opinion testimony identifying him as the individual depicted in surveillance footage.

There is generally no prohibition on a witness offering opinion testimony that addresses an ultimate issue in a case.  The Federal and Michigan Rules of Evidence permit such testimony. *See* Fed. R. Evid. 704(a); Mich. R. Evid. 704.  Thus, there is no clearly established federal law as determined by the Supreme Court that suggests that the admission of opinion evidence violates the Constitution. *See, e.g., Davis v. Trierweiler*, No. 15-14420, 2018 WL 1586487, *10 (E.D. Mich. March 31, 2018) (citing *Hopp v. Burt*, No. 03-10153, 2007 WL 162248, *9 (E.D. Mich. Jan. 16, 2007)).  And it is well established that trial court errors in the application of state procedural or evidentiary law, particularly regarding the admissibility of evidence, generally are not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

Moreover, Rosas has not shown that this testimony was improper.  Under Michigan law, lay opinion testimony is admissible if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Mich. R. Evid. 701.  In this case, the witnesses' identifications of Rosas on the video and still photographs were based on their observations at the scene.  Because that testimony was admissible, defense counsel cannot be faulted for not raising a meritless objection. *Jalowiec v.*

-12-

*Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (noting that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

d.

Rosas argues that counsel was ineffective because he did not request an unarmed robbery jury instruction. Under Michigan law, unarmed robbery is a lesser included offense of armed robbery. *People v. Beach*, 429 Mich. 450, 490-91, 418 N.W.2d 861, 879 (1988), *superseded by statute on other grounds as recognized in People v. Smith-Anthony*, 494 Mich. 669, 687 n.53, 837 N.W.2d 415, 425 n.53 (2013). Armed robbery involves the use of a weapon or an item used as a weapon, and unarmed robbery does not.

Two witness, Jones and Gilliam, testified that Rosas carried a gun that night. Considering this evidence, it was reasonable for defense counsel not to request an unarmed robbery instruction. Trial counsel may have decided reasonably to pursue an all-or-nothing strategy in the hope that the jury would acquit the petitioner of armed robbery. That was reasonable trial strategy, and counsel's strategic decision will not support a claim of deficient performance. *Robins*, 698 F.3d at 337-38. Rosas therefore has failed to show that the state court's denial of this claim was contravened or unreasonably applied *Strickland*. Habeas relief is not warranted on this claim.

e.

Finally, Rosas argues that his attorney was ineffective because he did not request a defense-of-others jury instruction. Because no state court addressed the merits of this claim, the Court conducts a fresh review of this claim. Under Michigan law, "[o]ne may use force in defense of

-13-

another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm . . . ." *People v. Leffew*, 508 Mich. 625, 638, 975 N.W.2d 896, 904 (2022) (quoting 3A Gillespie, *Michigan Criminal Law & Procedure* § 91:59 (2d ed.), p. 399). Rosas offers no argument in support of this claim. He does not identify who he was defending or explain why force was necessary to prevent harm. Because there is no evidence or developed argument to support a defense-of-others instruction, Rosas cannot show that counsel was ineffective by failing to request the instruction.

B.

Rosas next argues that his sentence violates the Sixth Amendment. Under the Sixth Amendment, any fact that increases the maximum penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The same requirement applies to any fact that increases a mandatory minimum. *Alleyne v. United States*, 570 U.S. 99, 111-12 (2013). In *People v. Lockridge*, the Michigan Supreme Court held that, under *Alleyne*, the mandatory application of Michigan's sentencing guidelines was unconstitutional. 498 Mich. 358, 386-88, 870 N.W.2d 502, 518-19 (Mich. 2015). To remedy this violation, the Michigan Supreme Court made the sentencing guidelines advisory. *Id.* at 391, 870 N.W.2d at 520-21.

Rosas was sentenced after *Lockridge* was decided and the state sentencing guidelines were made advisory. Purely advisory applications of the sentencing guidelines do not violate the Sixth Amendment. *United States v. Booker*, 543 U.S. 220, 233 (2005). Rosas's claim is meritless.

III.

The petitioner's claims do not present a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an

-14-

unreasonable application of federal law, or an unreasonable determination of the facts.  The

petitioner has not established that he is presently in custody in violation of the Constitution or laws

of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson   
DAVID M. LAWSON
United States District Judge

Dated:   October 6, 2023